107

## Johnson, Webbert & Beard, LLP   *Attorneys & Counselors at Law*

*1 Bowdoin Mill Island, Ste. 300*   *Phone: 207- 623-5110*
*Topsham, ME 04086*   *Fax: 207-622-4160*
*www.johnsonwebbert.com*   *dwebbert@work.law*

January 30, 2026

*By Email, Fax, and US Certified Mail*
U.S. Department of Homeland Security (DHS)
Office of the General Counsel
245 Murray Lane, SW, Mailstop 0485
Washington, DC 20528-0485
ogc@hq.dhs.gov
202-606-2609

Charles Wall, Principal Legal Advisor
U.S. Immigration and Customs Enforcement (ICE)
Office of the Principal Legal Advisor
District Court Litigation Division
500 12th Street, SW, Mailstop 5900
Washington, DC 20536
OPLA-DCLD-TortClaims@ice.dhs.gov

Re:   Notice of Claim of Robert C. Peck for Damages under Section 2675 of
the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680

Dear Counsel for the U.S. Department of Homeland Security and U.S. Immigration
and Customs Enforcement:

On the morning of Thursday January 22, 2026, in Scarborough, Maine, Robert
C. Peck, a U.S. citizen who lives in South Portland, was exercising his First
Amendment right to observe ICE agents. He began observing them after he became
aware that ICE agents had come to the Mexican restaurant across the street from his
apartment. He was observing them because two days earlier ICE had swarmed into
Portland and surrounding towns in an unprecedented invasion it publicly touted as
"Operation Catch of the Day."

ICE claimed it was "targeting the worst of the worst criminal illegal aliens
across Maine," but the name it chose for the operation reveals its true intent to catch
people of color like so many fish in its nets. Mr. Peck was already aware that squads

*Robert C. Peck FTCA Claim for Damages*
*January 30, 2026*
*Page 2*

of masked and armed ICE agents were engaging in a pattern of forcibly grabbing Mainers based solely on the color of their skin, and that almost all those detained were hard-working, contributing members of the community who were complying with the applicable legal procedures for immigrants to live and work in this country. Indeed, on January 21, 2026, ICE issued a press release justifying its campaign of aggression in capturing and disappearing at least 50 Mainers based on detaining three people convicted of crimes—one of which was an OUI—and one person who had only been arrested but not convicted of a crime. (As of January 29, 2026, ICE was bragging that it had arrested and taken away 200 Mainers but could only identify ten who had any sort of criminal conviction.)

Mr. Peck was born in Maine and spent the early years of his life in Lewiston, where his father was a coach at Bates College. He is a licensed clinical social worker, and he and recently retired after 18 years of employment as a mental health counselor with the U.S. Department of Veterans Affairs at its Vet Center in Portland, Maine.

Like many Mainers, Mr. Peck takes pride and pleasure in looking out for his neighbors and treating everyone he meets with respect and dignity simply because that is the way life should be.

This claim is based on wrongful and unconstitutional actions, including a threat to arrest and rough up Mr. Peck in retaliation for his protected First Amendment activity. This extreme and outrageous conduct was perpetrated by two ICE agents dressed up as "law enforcement officers," but in fact acting as secret police devoted to preemptive repression. Mr. Peck recorded the wrongful conduct of the ICE agents, and the video is available at https://www.youtube.com/shorts/U5HDhj4x9MM.

These ICE agents were acting within the scope of their official duties and following orders from the top leaders of DHS and ICE to both (1) meet their daily quota of 3,000 arrests leading to expedited deportation and (2) terrify into submission everyone who might oppose or criticize the Trump administration.

## Statement Of Facts

Robert Peck is a U.S. citizen who resides in South Portland, Maine. On the

*Robert C. Peck FTCA Claim for Damages*
*January 30, 2026*
*Page 3*

morning of January 22, 2026, Mr. Peck heard whistles, car horns, and a general commotion and realized it was due to the activity of ICE officers near the Mexican restaurant that that he can see across the street from his apartment window and that he frequently is a customer of. He went towards the restaurant to find out what was happening and he soon saw ICE agents drive away in an unmarked SUV with New York plates.

Mr. Peck followed the ICE agents' vehicle in his car so that he could observe their activities. He wanted to be a good neighbor and document any instances when the ICE agents violated anyone's rights.

Mr. Peck tried to keep at least one car between his vehicle and the ICE vehicle; he never tailgated or got unusually close. The ICE vehicle flew through a red light, and he did not follow but instead stopped at the red light.

Mr. Peck lost sight of the SUV with New York plates in Scarborough, Maine, so he went to the ICE detention center in Scarborough to observe ICE activity. A different SUV with Massachusetts license plates pulled out of the parking lot of the ICE detention center, and Mr. Peck followed to observe the ICE agents.

While following this ICE vehicle, Mr. Peck was careful to stay a safe and respectful distance from the ICE vehicle so he would not even come close to getting in the way of the vehicle or in any way suggesting that he intended to block, ram, or interfere with the free movement of the ICE vehicle and its occupants.

Mr. Peck observed this ICE vehicle go through a red light to turn left on Route 1. Once again, he did not follow but instead stopped at the red light. This extremely dangerous maneuver showed that these ICE agents were willing to cause major injuries to innocent bystanders for no good reason and raised Mr. Peck's sense of alarm and vulnerability.

Mr. Peck never came close to making any physical contact with the vehicle or the ICE agents in the vehicle. He never made any form of threat or display of aggression toward the ICE vehicle or anyone in the vehicle. In short, he did nothing that could possibly inspire them to fear pain, bodily harm, or death because of his following them.

While Mr. Peck was following the SUV with Massachusetts plates, it turned

*Robert C. Peck FTCA Claim for Damages*
*January 30, 2026*
*Page 4*

onto a side road, and he followed. The ICE vehicle stopped, and Mr. Peck pulled his car to the side of the road. The ICE agents exited their vehicle and approached Mr. Peck's vehicle. They wore masks to hide their faces and tactical vests that said "POLICE." The agents, pictured below, also had weapons and ammunition strapped to their vests and handguns on their belts.



The ICE agents ordered Mr. Peck to lower his window, and he complied. One of the agents, who was the closer of the two and who we will refer to as Agent A,

*Robert C. Peck FTCA Claim for Damages*
*January 30, 2026*
*Page 5*

asked Mr. Peck if he was following them, and Mr. Peck confirmed that he was. The agent told Mr. Peck, "what you're doing is called impeding federal law enforcement," and, "it's an 18 USC charge 111." He then sternly admonished Mr. Peck, "this is your first and only warning, if you continue to impede us and follow us, you will be arrested."

Mr. Peck corrected what Agent A had said and explained that he was not impeding them. The other agent, with BOS-05 printed on his vest and who we will refer to as Agent B, responded that Mr. Peck had "just openly admitted" he was following them. Mr. Peck explained that he was following them, but he was only observing them, not impeding them. Agent B then firmly emphasized to Mr. Peck that he was "impeding," even though Mr. Peck was merely following an ICE vehicle in public to observe it. Agent B aggressively told Mr. Peck, "that's your one warning, if you keep doing it, we'll pull you back out and arrest you."

The tone and body language of Agent B and his final warning—"if you keep doing it, we'll pull you back out and arrest you"—sent a strong message that, if the agents ever saw Mr. Peck in his vehicle again, they would go out of their way to use unnecessary force while they arrested him.

During the stop, ICE Agent A repeatedly put his hand on the passenger door of Mr. Peck's car and next to the partially open window. This physical intrusion caused Mr. Peck to fear that Agent A might grab him through the window and forcibly arrest him.

No reasonable ICE or other federal law enforcement office could possibly think that the mere following of an ICE vehicle at a safe distance by a person attempting to observe ICE's activities in their community amounted to the crime of impeding under 18 U.S.C. 111. It is settled law that the Section 111 crime of impeding requires proof beyond a reasonable doubt that "the defendant acted forcibly":

> The element of "forcible" action can be met by a showing of either physical contact with the federal agent, or by "such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death." *E.g.*, *Rafidi*, 829 F.3d at 446 (quoting *United States v. Chambers*, 195 F.3d 274, 277 (6th Cir. 1999)); *United States v. Schrader*, 10 F.3d 1345, 1348 (8th Cir. 1993). "Forcibly" modifies all of

*Robert C. Peck FTCA Claim for Damages*
*January 30, 2026*
*Page 6*

the actions that follow, including assault. *See United States v. Charles,* 456 F.3d 249, 255 (1st Cir. 2006). The government must also prove an assault, or a similar act of resisting, opposing, or impeding an officer.

*United States v. Taylor,* 848 F.3d 476, 493 (1st Cir. 2017).

## Personal Injuries

This direct infliction of the tactics of a supercharged secret police force has quite foreseeably caused Mr. Peck to suffer (and he continues to suffer) major trauma and severe injuries, including the loss of enjoyment of his prior freedoms to (1) drive his car without fear of violent and sudden arrest and (2) be confident that, whether in his home or in public, law enforcement agents will be professional and committed to upholding the rule of law and not terrorizing and assaulting members of the public.

Mr. Peck's damages also include physical harms and symptoms such as elevated blood pressure levels, severe insomnia, and uncontrollable trembling. In addition to humiliation, mental anguish, and anxiety, his severe emotional distress has manifested itself as shock, hypervigilance, and hypersensitivity to stimuli, including to sights and sounds that bring back the abuse by the two ICE agents and trigger the feeling of extreme fear and anxiety they caused.

Because of his past life experiences, Mr. Peck was particularly vulnerable to suffering trauma from the threats of force and violence by the two masked and armed ICE agents. For example, during his college years in the early 1980s, he was wrongfully arrested in Costa Rica and detained for 24 hours for peacefully participating, with three other American citizens, in demonstrations that occurred while he was attending a language school. Later that same day, he was arrested a second time and told he was going to be deported. He was later harassed again by the police in Costa Rica.

Further, Mr. Peck had already experienced secondary trauma through providing counselling services for 18 years to United States veterans who had been deployed in combat operations and who recounted horrific events, including the excessive use of force by persons acting in the name of the government.

*Robert C. Peck FTCA Claim for Damages*
*January 30, 2026*
*Page 7*

Mr. Peck's severe emotional distress may easily be inferred from the extreme and outrageous nature of the misconduct that the ICE agents directed at him and the pattern of misconduct against his fellow Mainers that has been widely reported in the press and acknowledged by the government leaders of Maine, including the Governor and the state's two United States Senators.

## Legal Support

### I.    Federal Tort Claims Act Jurisdiction

The Federal Tort Claims Act permits individuals to bring claims against the United States for negligent or wrongful acts committed by federal employees acting within the scope of their official duties. 28 U.S.C. § 2674, *et seq.* Specifically, the FTCA waives the federal government's sovereign immunity "under circumstances where local law would make a *private* person liable in tort." *United States v. Olson*, 546 U.S. 43, 44 (2005) (quoting 28 U.S.C. § 1346(b)(1)) (citation modified; emphasis in original). While claims asserting some intentional torts, including assault, are typically not subject to the FTCA's waiver, these claims are permitted when brought against federal investigative or law enforcement officers like ICE agents. 28 U.S.C. § 2680(h). Similarly, the FTCA's exception to liability for claims involving "discretionary functions" of federal employees does not apply when federal employees act in violation of constitutional or other legal rights. *See Limone v. United States*, 579 F.3d 79, 101-02 (1st Cir. 2009); *Hornof v. United States*, 107 F.4th 46, 57 n.10 (1st Cir. 2024).

Here, Mr. Peck's claims are against federal law enforcement officers whose conduct violated multiple constitutional rights protected by the First and Fourth Amendments, as well as the Immigration and Nationality Act and ICE's own Standards for Enforcement Activities.

### II.    ICE Officers' Illegal Conduct

#### A. Violation of the First Amendment

It is well-established that the First Amendment protects people who are "[g]athering information about government officials." *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) (First Amendment protected plaintiff's right to record law

*Robert C. Peck FTCA Claim for Damages*
*January 30, 2026*
*Page 8*

enforcement officers); *see also ACLU of Illinois v. Alvarez*, 679 F.3d 583, 602 (7th Cir. 2012) (law that prohibited recording of law enforcement officers enjoined under First Amendment); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (subject to reasonable time, place, and manner restrictions, individuals have First Amendment right to photograph or videotape police conduct).

Gathering information about government officials, as Mr. Peck did, "serves a cardinal First Amendment interest," particularly when it comes to "law enforcement officials, who are granted substantial discretion that may be misused to deprive individuals of their liberties." *Glik*, 655 F.3d at 82. "Ensuring the public's right to gather information about their officials not only aids in the uncovering of abuses but also may have a salutary effect on the functioning of government more generally." *Id.* at 82–83 (citation modified).

Mr. Peck engaged in core First Amendment-protected activity when he sought to document potential abuses and rights violations through his observation of ICE agents. By threatening to arrest Mr. Peck for exercising his First Amendment right to observe them, these ICE agents engaged in an unconstitutional act that harmed Mr. Peck. *See Jean v. Massachusetts State Police*, 492 F.3d 24, 33 (1st Cir. 2007) (arrest of plaintiff for publishing video of police activity was enjoined because it would violate First Amendment); *Am. Ass'n of Univ. Professors v. Rubio*, 802 F. Supp. 3d 120, 190 (D. Mass. 2025) (threats of arrests to chill speech violated the First Amendment); and *Damon v. Hukowicz*, 964 F. Supp. 2d 120, 151 (D. Mass. 2013) (threatening to unlawfully arrest plaintiff violated his rights).

## B. Violation of the Fourth Amendment

When the ICE agents directed Mr. Peck to lower his car window and subjected him to questions about his activities, they engaged in an unconstitutional seizure in violation of the Fourth Amendment. Before a law enforcement officer may stop and question someone, they must have a reasonable suspicion to believe that the person is engaged in unlawful activity. Here, Mr. Peck did absolutely nothing to raise suspicion that he had engaged in unlawful activity. He was legally driving his car on a public street behind the ICE agents' vehicle. Thus, the ICE agents violated Mr. Peck's Fourth Amendment rights when they subjected him to an investigative seizure.

*Robert C. Peck FTCA Claim for Damages*
*January 30, 2026*
*Page 9*

## Completed Form 95 Attached

I have signed and attached a fully completed Form 95. I submit that Form 95 and this notice of claim for damages under Section 2675 of the FTCA in my capacity as the authorized legal representative of claimant Robert C. Peck. In compliance with 28 C.F.R. § 14.2, this notice of claim is "accompanied by evidence of my authority to present a claim on behalf of the claimant as his legal representative."

I look forward to your response to this claim and would be glad to consider requests for further factual or legal information that might assist DHS and ICE in reviewing and acting upon this claim as soon as possible.

Respectfully submitted,

David G. Webbert
Attorney and Legal Representative for
Robert C. Peck

Enclosures:   Completed Form 95
             Authorization by Mr. Robert C. Peck

## Authorization

To:    United States Department of Homeland Security, United States Immigration and Customs Enforcement

This is to confirm that I authorize attorney David G. Webbert and the law firm of Johnson, Webbert & Beard, LLP, ("JWB"), 1 Bowdoin Mill Island, Ste. 300, Topsham, ME, 04086, to file a notice of claim on my behalf under the Federal Tort Claims Act, 28 U.S.C. §2675, against the United States Department of Homeland Security for wrongful actions by its employees who appeared to be working for the U.S. Immigration and Customs Enforcement, on about January 22, 2026.

Please honor photographic or digital copies of this authorization, including if provided by email or fax, and please honor my signature in the same formats, including my electronic signature.

Date: 01/29/2026

Robert C Peck (Jan 29, 2026 15:12:46 EST)

Robert C. Peck

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement | Robert C. Peck, ███████████████ ████; Legal Representative: David G. Webbert, Esq., Johnson, Webbert & Beard, LLP, 1 Bowdoin Mill Island, Suite 300, Topsham, ME 04086 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | ████████ | divorced/single | 01/22/2026 | AM |

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See attached complaint

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See attached complaint including link to video and audio recording of the wrongful acts

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Names of agents of ICE are unknown | |

**12.** (See instructions on reverse). **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 0.00 | 7,500,000 | 0.00 | 7,500,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13. *David Webbert* (e). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| | 207-623-5110 | 01/30/2026 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

**STANDARD FORM 95** (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

### INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?  ☒ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☐ No

██████ :

████████████████████████

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes  ☒ No

17. If deductible, state amount.

0.00

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

Not applicable.

19. Do you carry public liability and property damage insurance?  ☒ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☐ No

████████████████████████████

### INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:*  The information requested is to be used in evaluating claims.
C. *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

### PAPERWORK REDUCTION ACT NOTICE

This notice is <u>solely</u> for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**